**In re CULMTECH, LTD., Debtor.**

**Bankruptcy No. 5–87–00065.**

United States Bankruptcy Court,
M.D. Pennsylvania.

Aug. 28, 1990.

Robert N. Opel, II, Kingston, Pa., for trustee.

Charles J. Bufalino, Jr., West Pittston, Pa., for FJ & F Coal Co.

## MEMORANDUM AND ORDER

THOMAS C. GIBBONS, Bankruptcy Judge:

In this liquidation proceeding, we have for consideration a Motion by the Trustee seeking court approval of the compromise of a claim against Anjomar, Inc. pursuant to the terms of a Stipulation of counsel dated May 18, 1990 and approved by the United States District Court on May 22, 1990. In accordance with that Stipulation, Anjomar, Inc. would dismiss the pending appeal in the District Court from an Order of the Bankruptcy Court dated December 29, 1989 granting a judgment in favor of Merchants Bank North and the estate against Anjomar, Inc. in the amount of $239,121.

Additionally, Anjomar, Inc. would pay the sum of $100,000 in settlement which would be distributed to reimburse Merchants Bank North for advanced litigation costs, to pay the attorney for the Trustee a 25% contingency fee, and the balance of the $100,000 to be distributed equally between Merchants Bank North on its secured claim which has an outstanding balance in excess of $1,300,000 and the Bankruptcy Court for distribution to creditors.

This motion is brought pursuant to Bankruptcy Rule 9019(a) which provides as follows:

(a) **Compromise.** On motion by the trustee and after a hearing on notice to creditors, the debtor and indenture trustees as provided in Rule 2002(a) and to such other entities as the court may designate, the court may approve a compromise or settlement.

The Trustee points out that the approval of the settlement clearly lies within the sound discretion of the Bankruptcy Court. In deciding whether to approve a settlement, the court must determine whether the property settlement is in the best interests of the estate. Cases in support of this principle are too numerous to mention.

*Colliers,* one of the leading publications in this field, discussing the rule above cited in Volume 9 of its 15th edition points out at ¶ 9019–3 that compromises are favored in bankruptcy and that much of litigation in bankruptcy estates results in settlements. It points out that:

"There are numerous opinions which set out the standards to which a court should look in determining whether or not it should approve a proffered settlement or compromise of a controversy. The courts take their guidance from the Supreme Court case of *Protective Committee Stockholders of TMT Trailer Ferry, Inc. v. Anderson,* 390 U.S. 414, 88 S.Ct. 1157, 20 L.Ed.2d 1 (1968). In that case, the Supreme Court mandated that a bankruptcy court, in considering whether to approve a compromise, should 'apprise [itself] of all facts necessary for an intelligent and objective opinion of the probabilities of ultimate success should the claim be litigated. Further, the judge should form an educated estimate of the complexity, expense, and likely duration of such litigation, the possible difficulties in collecting on any judgment which might be obtained, and all other factors relevant to a full and fair assessment of the wisdom of the proposed compromise.' *Protective Committee Stockholders of TMT Trailer Ferry, Inc. v. Anderson, supra,* 88 S.Ct. at 1163–1164.

Taking their cue from the *TMT* case, most circuit courts that have considered the issue have adopted a uniform standard by which the bankruptcy judge or other trial officer should be governed in the hearing on a motion to approve a compromise. According to these cases, the court should consider:

'(a) The probability of success in the litigation; (b) the difficulties, if any, to be encountered in the matter of collection; (c) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; (d) the paramount interest of the creditors and a proper deference to their reasonable views in the premises.' " (citations omitted).

Two objections have been filed to this motion. One by FJ & F Coal Co., Inc. and Frank Lotzi which says simply that the proposed settlement is neither fair or adequate. No testimony or evidence was offered in support of this objection and it is deemed to be without merit.

The second objection was filed by one R.V. Hevner, Senior Vice President of the debtor estate. This objection deals with potential claims of the Department of Environmental Resources. This agency entered its appearance in these proceedings on April 26, 1989 in the person of W.J. Gerlach, Esquire, Assistant Counsel, Pennsylvania Department of Environmental Resources. It has not filed any objection to this motion and while the objection of Mr. Hevner may have some relevance in subsequent proceedings in the administration of this estate, they have no bearing on the motion under consideration.

Additionally, *Collier* points out at ¶ 9019–3 that:

"There is no rule of law that says that the bankruptcy judge has to respond to every objection raised by an objecting creditor. Where the evidence on the issue of a compromise is thorough and comprehensive, and the court is familiar with the entire record and touches all materials bases of the creditor's objections, the court's approval of a compromise does not constitute an abuse of discretion." *Martin v. Kane (In re A & C Properties),* 784 F.2d 1377 (9th Cir), *cert. denied sub nom.*

Finally, no effort was made by Mr. Hevner to offer any evidence or proof of the aforesaid objection which defeats the Trustee's Motion. Accordingly, it is also deemed without merit.

The Trustee's presentation is very compelling. It demonstrated that he had adequately considered the probability of success in the litigation, its complexity and the potential difficulty of executing on any final judgment.

Documentary evidence was submitted by the Trustee which clearly indicated that by virtue of recorded assignments of the Lease and Royalty Agreement with Anjo-

mar, Inc. under which Trustee's cause of action arose, Merchants Bank North would appear to be in a position to claim all of the proceeds of any final judgment. This is one of the most salient and convincing items of the Trustee's position. Without it, there would be no recovery whatever for creditors. Obviously, the conclusion that it is in the best interests of creditors is easily seen.

Another aspect of the Trustee's case dealt with the sole asset of Anjomar, Inc., to wit: unimproved acreage. He demonstrated that the land was of questionable value and in addition to the decline in worth, it carried the additional difficulty of an overburden of culm which would significantly depress its value.

In the largest bankruptcy case in the history of this country, *In re Texaco, Inc.,* 84 B.R. 889 (Bankr.S.D.N.Y.1988), the court listed certain factors in reaching its ultimate decision to approve a compromise in settlement. Citing *TMT Trailer Ferry, supra,* it reiterated those listed there and due to the unusual complexity of the case added those of special significance. Among these was:

"(4) The competency and experience of counsel who support the settlement."

In the case at hand, the Trustee had as counsel the same lawyer who tried the case for the debtor originally and presumably knows it as well if not better than anyone possibly could. He is an experienced and highly-regarded bankruptcy practitioner and enjoys a professional reputation of the highest order. His judgment, therefore, is deserving of the highest respect. Because of this, we find the quotation of Judge Galgay in the *Matter of W.T. Grant Co.,* 4 B.R. 53, 69, (Bankr.S.D.N.Y.1980), to be especially meaningful and extremely apt:

"It is clear to this court ... that the Trustee has apprised himself of 'all facts necessary for an intelligent and objective opinion of the probabilities of ultimate success should the [controversy] be litigated.' *Protective Committee for Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson,* 390 U.S. 414, 88 S.Ct. 1157, 20 L.Ed.2d 1 (1968). It is also

evident that the Trustee formed 'an educated estimate of the complexity, expense, and likely duration of such litigation, ... and all other factors relevant to a full and fair assessment of the wisdom of the proposed compromise.' *Ibid.* at 424, 88 S.Ct. at 1163. Also, it is obvious that the Trustee compared 'the terms of the compromise with the likely rewards [or lack thereof] of litigation.' *Ibid.* p. 425, 88 S.Ct. p. 1163, for the Subordinated Debentureholders. Thus, the Trustee has discharged his statutory responsibilities. *In re Blair,* 538 F.2d 849 (9th Cir.1976)."

In summary then, it seems clear that any objective consideration of the proposed settlement of this matter, the record made by Trustee in support thereof, and all available information virtually compels the conclusion that it is fair, equitable and reasonable and will be in the best interests of this estate.

Accordingly, we enter the following order.

### ORDER

AND NOW, at Wilkes–Barre, this 28th day of August, 1990, upon consideration of the Motion to Approve Compromise of Claims, Disbursements and Payment of Attorneys Fee between the Trustee and Merchants Bank North, it is hereby

ORDERED that the above mentioned Motion is granted; the compromise proposed as reflected in a Stipulation between the parties is approved; that John J. Thomas, Trustee, is authorized to perform such actions as are necessary to carry out the terms of the above mentioned compromise; and counsel for Anjomar, Inc. within fifteen (15) days from the date of this Order is directed to discontinue the appeal of this matter pending in the District Court of the Middle District of Pennsylvania.