**In re Ben T. AUSTIN, III, Norma J. Austin, Debtors.**

**Bankruptcy No. 92–14743–AT.**

United States Bankruptcy Court, E.D. Virginia, Alexandria Division.

Feb. 21, 1995.

398

Bruce W. Henry, Dominique V. Sinesi, Henry & Henry, P.C., Fairfax, VA, for various partnership interests.

Donald F. King, James Reynolds, Odin, Feldman & Pittleman, P.C., Fairfax, VA, for trustee.

Jack Frankel, Office of U.S. Trustee, Alexandria, VA.

Richard J. Stahl, Dixon, Smith & Stahl, Fairfax, VA, for debtors.

## MEMORANDUM OPINION

DOUGLAS O. TICE, Jr., Bankruptcy Judge.

Hearing was held November 29, 1994, on a joint application for approval of compromise filed by the debtors' trustee in bankruptcy and other interested parties. The application was opposed by debtor and the Office of United States Trustee.

Following argument the court ruled from the bench that the application would be approved on the condition that the trustee modify the settlement to satisfy the objection of the United States Trustee. The trustee agreed to the United States Trustee's conditions.

This opinion supplements the court's bench ruling.

### Facts

This case was commenced with the filing of an involuntary petition under Chapter 7 of Title 11 of the United States Code in the Southern District of Florida on December 5, 1991. An order for relief was entered on August 7, 1992, and the case was subsequently transferred to this district. Donald F. King is the duly appointed Chapter 7 Trustee.

Prepetition, debtor Ben T. Austin was a general partner in Quadel N.W. Associates (Quadel), along with Norman Watson and Thomas Webb (now deceased). Quadel was the sole general partner of Northwood Associates, a Maryland Limited Partnership (Northwood). These entities had been in the process of winding up their business affairs when the debtor went into bankruptcy, staying that process. At that time, debtor was acting as managing general partner for both entities. While partial partnership distributions had been made to some partners, Watson and Webb had not yet received their full distributions from Quadel. Northwood still retained assets to be distributed to its limited partners.

Since debtor was placed in bankruptcy, his trustee has taken control of the remaining assets of Northwood and Quadel solely for the purpose of conducting an accounting to determine entitlement to funds. The only assets of Northwood and Quadel consisted of two bank accounts in the amounts of $14,098.45 and $150,832.47, respectively.

Watson and Webb allege that they are entitled to distribution from the partnerships as the only remaining partners of Quadel not to have received their distributions prepetition. The limited partners of Northwood allege they are entitled to the remaining assets of Northwood because Quadel previously received its full general partnership share.

The trustee, who engaged accountants to examine the partnership records, takes the position that the bankruptcy estate has claims against Watson and Webb based upon their promissory notes to debtor Austin.

## THE COMPROMISE AGREEMENT

The compromise includes the following provisions:

a. The trustee will pay the balance of funds held in the Quadel account ($158,832.47 plus any additional interest that may accrue) to the partners of Quadel, other than debtor, according to their interests and rights;

b. The trustee will pay the balance of funds held in the Northwood account ($14,698.45 plus any additional interest that may accrue) to Northwood's limited partners;

c. Prior to making the payment to the Northwood limited partners, the trustee may deduct from the Northwood bank account fees and costs of not more than $5,650.00 for the accounting services incurred by the trustee;

d. The trustee will not be responsible for partnership distributions of Quadel and Northwood. Watson and a representative of the limited partners will be responsible to complete the wind-up and termination of both Quadel and Northwood in compliance with applicable state law;

e. Watson and Webb will each pay to the bankruptcy estate the sum of $17,500.00 representing full satisfaction of any claims the estate may have against them;

f. Watson, Webb, and the limited partners of Northwood agree to assign any interests or claims they may have against debtor to the trustee and to cooperate with the trustee in the collection of any claims.

## TRUSTEE'S POSITION

The trustee recommends approval of the compromise because he believes it is in the best interest of the estate and its creditors.

## DEBTOR'S OPPOSITION TO COMPROMISE

In a written response to the trustee's application and in argument at hearing, debtor's counsel opposes the compromise on several grounds which may be summarized as follows:

1. The application fails to identify all claims debtor may have against Watson and Webb by virtue of promissory notes not addressed in the application, including a note in the amount of $350,000.00.

2. The settlement payment to the estate of $35,000.00 is too low in view of the amount in the partnership bank accounts the trustee is giving up and other funds available; the trustee's explanation of the basis of the amount being accepted is inadequate.

3. Debtor's primary objection to the compromise appears to be the trustee's release of any liability of Watson and Webb and their assignment to the trustee of any claims they may have against debtor or against debtor's attorneys and accountant; these claims have not been identified.

4. The trustee is exceeding his authority by acting as a partner of the partnerships.

5. Because of assignments made by Watson, Webb and other individuals, there are indispensable parties who are not parties to the compromise.

### Discussion And Conclusions

■ The trustee and others request the court to approve a compromise settlement of various claims pursuant to Rule 9019(a) of the Fed.R.Bankr.P. Proper notice of the settlement was given, and only the debtor and the United States Trustee appeared in opposition at hearing. The United States Trustee's objection was technical rather than substantive and was resolved by agreement at hearing.

Basic criteria for a bankruptcy court to apply in considering approval of a compro-

mise were prescribed by the Supreme Court in the 1968 decision, *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson,* 390 U.S. 414, 88 S.Ct. 1157, 20 L.Ed.2d 1 (1968). Bankruptcy judges were charged by the court to make an informed and independent judgment of whether a proposed compromise is fair and equitable. More explicitly:

> [A bankruptcy judge should] apprise [himself] of all facts necessary for an intelligent and objective opinion of the probabilities of ultimate success should the claim be litigated. Further, the judge should form an educated estimate of the complexity, expense and likely duration of such litigation, the possible difficulties in collecting on any judgment which might be obtained, and all other factors relevant to a full and fair assessment of the wisdom of the proposed compromise.

390 U.S. at 424, 88 S.Ct. at 1163.

■ While I have found no published Fourth Circuit opinions on the issue, a number of decisions have set out additional criteria for the bankruptcy court's consideration of proposed compromise settlements under Rule 9019(a). The rulings establish a fairly uniform and liberal standard. In summary, the court is to consider the probability of the trustee's success in any ensuing litigation, any collection difficulties, the complexity, time and expense of the litigation, and the interests of creditors with proper deference to their reasonable views. *See Fireman's Fund Ins. Co. v. Woodson (In re Woodson),* 839 F.2d 610, 620 (9th Cir.1988); *American Can Co. v. Herpel (In re Jackson Brewing Co.),* 624 F.2d 605, 607 (5th Cir.1980); *In re Culmtech, Ltd.,* 118 B.R. 237, 238 (Bankr. M.D.Pa.1990); 9 Lawrence P. King, *Collier On Bankruptcy* ¶ 9019.03, at 9019–5–9019–6 (15 ed.1993).

■ In essence, the court must determine whether the settlement falls "below the lowest point in the range of reasonableness." *Cosoff v. Rodman (In re W.T. Grant Co.),* 699 F.2d 599, 608 (2d Cir.), *cert. denied,* 464 U.S. 822, 104 S.Ct. 89, 78 L.Ed.2d 97 (1983); *Official Comm. of Unsecured Creditors v. James Talcott, Inc. (In re International Distribution Ctrs., Inc.),* 99 B.R. 529, 531–532

(S.D.N.Y.1989). In fact, the settlement may be approved even if the court finds it likely that the trustee would ultimately succeed in the litigation. *In re International Distribution Ctrs., Inc.,* 99 B.R. at 532; *Rand v. Hessen (In re Teltronics Servs., Inc.),* 46 B.R. 426, 428 (Bankr.E.D.N.Y.1984), *aff'd,* 762 F.2d 185 (2d Cir.1985).

The controversy which the trustee seeks to settle in this case is somewhat complex. Prepetition, debtor was managing partner in two partnerships and had been in the process of liquidating both entities when the instant involuntary chapter 7 case was filed against him.

Debtor's trustee in bankruptcy took control of the two partnerships' assets held by debtor. These assets consisted of two bank accounts in the respective amounts of $14,098.45 and $150,832.47. There are conflicting claims to these assets by various partners. Conversely, the trustee has claims against two partners by virtue of their promissory notes owed to debtor.

The trustee's accountant examined the records of the two partnerships after which the trustee reached agreement with the various partners to settle all claims. The settlement provides for the trustee to pay the partnership funds he holds to the partners of the partnerships (exclusive of debtor). From one partnership account the trustee will receive the sum of $5,650.00 for payment of the trustee's accountant. The trustee will also receive the sum of $17,500.00 from each of the two partners who are indebted on promissory notes payable to debtor. The settlement also provides for release of all other claims among the various parties to the potential litigation.

The debtor's several objections to the trustee's proposed compromise settlement are set out above. Debtor, of course, argues that the trustee's recovery is too low and also asserts other objections which the court finds are without merit. The debtor presented no evidence at hearing to substantiate the argument that the settlement amount to the trustee is too low.

The trustee has given a full and adequate explanation of the basis for the settlement.

It is obvious that his investigation was extensive, and he believes the settlement is fair and in the best interests of the bankruptcy estate and creditors. It is also obvious that the litigation of the various claims would be lengthy and costly. No creditor has objected to the settlement.

I believe the trustee's informed analysis of the potential litigation along with his extensive experience as a bankruptcy trustee and lawyer give significant weight to his settlement proposal. *See In re Culmtech,* 118 B.R. at 239.

I concur with the trustee's recommendation. The settlement is reasonable and plainly complies with the standards established by the case law. An order approving the settlement has been entered.